# MANUEL SAGAS DE CANIZARES,

*against*

## The Brigantine SANTISSIMA TRINIDAD.

JUAN JOSEPH DE AGUIRE PEREZ, *Owner and Respondent.*

HYPOTHECATION AND MARINER's WAGES.

## *JUDGEMENT.*

T HE libel filed in this caufe is in the words following—

    " To the honorable FRANCIS HOPKINSON, efquire, Judge of the Court of Admiralty of the ftate of Pennfylvania ;

" THE bill of Manuel Sagas de Canizares refpectfully fheweth—That Don
                        Juan

Juan Jofeph de Aguire Perez, of the city of Cadiz, in the kingdom of old Spain, now refident in the city of Philadelphia, was and is owner of a certain brigantine called the Santiffima Trinidad ; and that Narifco Sanchez y Serna was commander of the faid brigantine, being thereto properly authorifed and appointed—the faid brigantine being of the burthen of 120 tons, or thereabouts. That the faid Narifco Sanchez y Serna, being on the high feas and within the jurifdiction of this court, viz. at the Havannah, in the ifland of Cuba, was under the neceffity of taking up money on the freight and property of the faid brigantine—the faid brigantine having fuffered by ftorms and tempefts on the high feas, and the crew of the faid brigantine being in want of provifions. In confequence whereof, and from the prolongation of the voyage thereby occafioned, the faid Narifco Sanchez y Serna did then and there, upon the high feas, and within the jurifdiction of this court, borrow from Santiago Cupifono the fum of 200 Mexican

can dollars, equal to the fum of £.75 lawful money of Pennfylvania ; in confideration whereof, the faid Narifco Sanchez y Serna did, on the 6th day of June, 1788, on the high feas, and within the jurifdiction of this court, by a certain writing, with the proper hand of the faid Narifco Sanchez y Serna, then captain, thereto fubfcribed, (which faid writing is here exhibited to this court) contract, covenant and agree with the faid Santiago Cupifono, and to him did hypothecate the faid brigantine, and her freight, in the words following, viz.

[*The contract, in the Spanifh language.*] The meaning and purport of which words are as follows, to wit,

" RECEIVED of Mr. Santiago Cupifo-
" no the fum of two hundred dollars,
" current money of Mexico, for the vic-
" tualling and firft expences of the bri-
" gantine, which fum I will pay at firft
" fight, in the name of the owner Don
" Juan Jofeph de Aguire Perez, who is
" in Philadelphia : which cafh I receive,

F " mortgag-

( 38 )

" mortgaging the freight, the brigantine
" and her rigging, as the faid Santiago
" Cupifono has lent me the above fum
" for the advantage of the veffel at Ha-
" vannah.

" June 6th, 1788.

" NARISCO SANCHEZ Y SERNA."

" AND afterwards, to wit, on the 13th
day of Auguft, in the year of our Lord
laft aforefaid, the faid Santiago Cupifo-
no, by his endorfement on the faid writ-
ing,* with his proper hand thereto fub-
fcribed, did order the contents to be paid
to your libellant.

" AND your libellant in fact fays, that
the faid brigantine did arrive fafely from
the port of Havannah to the port of Phi-
ladelphia on the 12th day of October in
the prefent year. And the faid Narifco
Sanchez y Serna, the faid captain, did
not,

* *Tranflation of the Endorfement.*
" FOR me, pay to the order of Manuel Sagas de Ca-
" nizares, the above expreffed fum, for value received
" of him.

" Havannah, Aug. 13th, 1788.

" SANTIAGO CUPISONO."

not, neither did the said Don Juan Joseph de Aguire Perez, owner of the same brigantine, pay, or cause to be paid, to your libellant, the said sum of 200 dollars, or any part thereof, which, according to the true intent and meaning of the said writings, so as aforesaid exhibited, the said Narisco Sanchez y Serna and the said Don Juan Joseph de Aguire Perez ought to have paid to your libellant; although your libellant hath demanded the said sum both from the same Narisco Sanchez y Serna, the captain, and the said Don Juan Joseph de Aguire Perez, the owner, at Philadelphia aforesaid.

" AND your libellant begs leave further to represent, that your libellant is an able seaman and pilot, well acquainted with the several harbours in the island of Cuba and on the continent of North America, and, as such, was shipped on board the brigantine Santissima Trinidad at Havannah, by Narisco Sanchez y Serna, now or late captain, master and commander of the said brigantine, at the monthly wages in the account hereunto annex-
ed,

ed,* mentioned ; to fail from the faid
port of Havannah to the port of Phila-
delphia ; and that it was ftipulated by
and between the faid captain and your
libellant, that in cafe the owners of the
faid brigantine fhould think proper to
difcharge your libellant at the port of
Philadelphia, in fuch cafe, your libellant
fhould receive three months wages, and
be furnifhed with a paffage back to the
faid

* *The Account annexed to the libel.*

The Brigantine Santiffima Trinidad,

1788.            To Manuel Sagas de Canizares, Dr.

Dec. 19.

To cafh lent in Havannah to captain Narifco
   Sanchez y Serna, commander of the faid
   brigantine, by Santiago Cupifono,   -   £.75   0   0
To 5 months and 19 days wages, from July
   1ft to Dec. 19th, at £.7 10   -       -     42   5   0
To 3 months pay, agreeable to contract,   -   22  10   0
To his paffage to Havannah,       -       -   22  10   0
                                             _____
                                             162   5   0
Received in Havannah 2 months advance,   -   15   0   0
                                             _____
                                             147   5   0
To 1 month's boarding Mr. Canizares has
   been obliged to find,   -     -     -     5  12   6

faid port of Havannah.* That the faid
brigantine did accordingly fail from the
port of Havannah and arrive at the port
of Philadelphia, and your libellant con-
tinued on board the faid brigantine dur-
ing all the faid voyage, and did his duty
as

* *Tranflation of the Agreement.*

THE Commandant General of the navy, and the
Intendant General, &c. having both obliged me to take,
as all other veffels do, a fecond pilot, as by order of His
Majefty no veffel, fmall or great, can leave his dominions
without having on board a firft and fecond pilot. In con-
fequence whereof, in the name of the owners, I have
fought for Don Manuel Sagas de Canizares, fecond pilot
of the navigation of Indies, and captain and firft pilot in
the French navy, as he has proved by his papers exhibited
to the faid Intendant, in whofe prefence, treating of his
wages, after having enquired of feveral other perfons,
found it more convenient and cheaper to pay him twenty
dollars current money of America per month. And in
cafe the owners think proper to fufpend thefe commiffi-
ons, they fhall bring him back to this port of Havannah,
paying him, above his wages, three months befides his
paffage, as the decency of his office requires it. And in
all the ports where the faid veffel fhall go, he fhall receive
the half of the daily allowance of a firft pilot, which is
feven reals and $\frac{3}{15}$ current money, and for a fecond pilot
4 reals ; or in cafe he does not receive provifions, &c.
agreeably to the ordinances of Bilboa and the regulations
of

as a feaman and a pilot aforefaid, until the
faid veffel arrived at the port of Philadel-
phia, and your libellant was difcharged
from doing any more duty on board the
faid brigantine by the captain and owner,
thereof. And altho' your libellant hath
requefted the faid captain and the faid
owner to pay him three months wages
and to furnifh him with a paffage back
to the Havannah, according to the agree-
ment aforefaid, yet the faid captain and
owner have hitherto refufed, and ftill do
refufe, to do the fame.

" WHERE-

of the navy—and in cafe this prefent agreement fhould
not be complied with, he fhall prefent it to the Minifter,
that he may oblige them to pay what is hereby promifed.
Two to be written of the fame tenor ; one for the war-
ranty of Don Juan Jofeph de Aguire Perez, to be figned
in his name by the captain of his veffel, and another in
the fame manner to be left, as the original, in the naval
office, with the commiffary Mr. Domingo Labadores,
each having the fame ftrength, as if they had been made
and executed before a Notary Public at Havannah.

July 1ft, 1788.     NARISCO SANCHEZ Y SERNA.
                    MANUEL SAGAS DE CANIZARES.

Received in advance Forty Dollars.
                    MANUEL SAGAS DE CANIZARES.

" WHEREFORE, your libellant prays, that the procefs of this honourable court may iffue againft the faid brigantine, and that fhe may be condemned by a fentence and decree of this honourable court, and that the faid brigantine may be fold, and the money arifing from fuch fale may be applied to the payment of the faid feveral fums due to your libellant.——And your libellant fhall ever pray, &c.

" Dec. 19, 1788."

THIS libel ftates two feparate claims of Canizares, the complainant, againft the brigantine Santiffima Trinidad. The *one* founded on an hypothecation of the faid veffel, made by the then captain to Santiago Cupifono at Havannah, for 200 dollars advanced by the faid Cupifono for neceffaries for the faid brigantine, as it is faid, and to enable her to profecute her voyage; which inftrument of hypothecation is endorfed or affigned over by the lender to the prefent libellant : and the *other*, founded on a written contract
between

between the said Narifco Sanchez y Serna, then captain, and Canizares, the libellant, made at Havannah, refpecting the wages he fhould receive for ferving as pilot and mariner on board the faid brigantine, in her voyage from Havannah to Philadelphia. As thefe claims arife from different contracts, it is manifeft that they mnft be feparately confider'd.

To determine on the force of this inftrument of bottomry, I fhall firft ftate the circumftances neceffary to the formation of a genuine hypothecation, according to the maritime law; and then take a view of the hiftory of this veffel's voyage, and her fituation at the Havannah, when Cupifono advanced the money in queftion.

As to the firft, I have had occafion, in three former fuits in this court, to ftate the doctrine refpecting a maritime hypothecation, and have not fince found reafon to alter my opinion of the principles on which thefe caufes were decided.— The cafes to which I refer were, Liebart, Baes,

Baes, Durdeyn and Co. againſt the ſhip
Emperor, Turnbull againſt the ſhip En-
terprize, and Forbes againſt the brig
Hannah. The firſt and third of theſe
cauſes were carried into the High Court
of Errors and Appeals, were there again
ſolemnly argued and conſidered, and,
without the intervention of any new teſ-
timony to alter the caſe, the ſentences
of the Admiralty were confirmed on the
fame, or nearly the fame, principles. I
can only now repeat the ſubſtance of
what was then obſerved.

> [*Here the Judge recapitulated the doc-*
>     *trines advanced, and the authorities*
>     *cited in the three foregoing cauſes, and*
>     *then proceeded to ſay*]

I SHALL now ſtate the hiſtory of the
voyage of this brigantine, as the fame
may be deduced from the teſtimony ex-
hibited.*

G                                   IT

---

* THERE was but one depoſition produced in this
cauſe, viz. that of the late captain of the brig. It might
have been a queſtion, whether his teſtimony was legally
admiſſable or not, but he was not objected to as a witneſs
by the proctors for either ſide.—His depoſition was in
theſe words :                              " NARISCO

IT appears, that this veffel was char-
ter'd on account of the king of Spain,
and was to fail from Philadelphia with a
cargo of flour for Carthagena—that the
flour

" NARISCO SANCHEZ Y SERNA, a witnefs produced
on the part of the libellant in this caufe, on his folemn
oath on the holy Evangelifts of Almighty God, faith—
That he, this deponent, received the 200 dollars men-
tioned in the libel (he being then captain of the faid bri-
gantine at the Havannah) of Cupifono, by the hands of
the libellant ; which money, or any part thereof, he, the
deponent, hath not paid to Cupifono again ; and that he
employed the faid money in paying wages to the crew and
in furnifhing frefh provifions, until he fhould receive mo-
ney from the Intendant.—That a furvey was ordered up-
on the veffel, and a report made to the Intendant, and he
then received a verbal order to take his veffel from the bay
to the upper part of the harbour, where the king's ware-
houfes are, there to difcharge, and after that to tranfport
his veffel to the king's arfenal, where fhe was repaired and
had a new bottom.—That he, the deponent, had no mo-
ney, nor any perfon to whom he could apply to obtain
the fame.—That the veffel leaked before he went into the
Havannah to fuch a degree, as to make more than 30 in-
ches of water in an hour.—That he never knew Mr. Cu-
pifono ; but he had *had* three or four days acquaintance
with the libellant.—That he requefted the libellant to
borrow him fome money, and he took him to Mr. Cupi-
fono's, where the money was paid to him.—That the
paper marked A, exhibited in this caufe and fhewn to
him,

flour was there to be fold, and a cargo of dye-wood purchafed and brought back to Philadelphia, or fome port of the United States. Such was the defignated

him, is a contract made between the libellant and the deponent.—That at the houfe of Cupifono, the faid Cupifono infifted upon the veffel and freight being hypothecated to him, otherwife he would not lend the money.—That Cupifono knew that the veffel put in in diftrefs—that every body knew it, and that he, the deponent, had told Cupifono of it.

" BEING crofs-examined, he faith—That the failing orders (marked B) are the failing orders he received.—That the paper (marked C) is the charter party figned between him and the freighter.—That the paper (marked D) is the account delivered by the deponent, on his return, to his owners. Being afked how he came to apply to the Intendant for money, he faith, That he prefented a memorial to him for that purpofe. Being afked whether he got any money in confequence of the memorial, he fays, That he did not ; but he was obliged to prefent five or fix memorials. Being afked, how long after he arrived at the Havannah he prefented a memorial, he anfwers, That he received the money from Cupifono the firft Sunday after his arrival. Being afked on what day he arrived at the Havannah, he anfwers, That he does not remember whether it was on Thurfday or Wednefday—that the memorial was prefented to the Intendant after the money was received from Cupifono.—That in the converfation he had with Cupifono, he told him that he expected to receive

nated voyage. But, it seems, the captain, instead of returning to Philadelphia from Carthagena, went to Jamaica with an adventure of his own; to what amount

ceive money from the Intendant, as he was charter'd on account of the king.—That he took on board a passenger at St. Martha, who was to proceed with him to this country. Being asked, whether, being at Jamaica, he did not dispose of an adventure of his own, he answered, He did, but they were not goods of the king's—that he invested the proceeds in dry goods, which he intended to dispose of at the Havannah.—That he told Cupisono that he had contraband goods on board which he had brought from Jamaica.—That in the course of conversations with Cupisono (for he had several) he does not recollect particulars.—That Cupisono did not ask him the nature of his voyage.—That Cupisono knew that the vessel was freighted with dye-wood on account of the king, and was designed for some port in the United States.—That he had informed Cupisono that he had received money from the Intendant; but that a little while before he sailed he met Cupisono, who asked him how he was off for money? to which the deponent replied, that he should be much straiten'd, whereupon the agreement (marked E, exhibited in this cause) was made and executed between them.—That he was near two months and an half at the Havannah. Being asked, whether the paper (marked E) was given on the day it bears date, he answers, That it was not given on the day it bears date, nor does he recollect whether it was the day after, or three or four days after, but that the

money

mount does not appear. That at Jamaica he purchafed dry goods fit for the Havannah market, and then failed with the brig to Havannah, where he difpofed of the goods he had bought at Jamaica, on his own account. That at Havannah he borrowed 200 dollars of Cupifono, and executed the inftrument called an hypothecation, to engage the veffel and her freight to Cupifono as fecurity for this fum. That part of this money was expended in paying wages to the failors, and part in fupplying them with frefh provifions. That the veffel was refitted at the king's arfenal, and at the expence of the Intendant. And that fhe afterwards failed for and arrived at the port of Philadelphia.

I AGREE with the counfel for the libellant, that the validity of an hypothecation ought not to depend upon the regularity of the captain's conduct with refpect

money was bona fide paid by Cupifono and received by the deponent, and that he does not recollect when the paper (marked E*) was executed."

* THE hypothecation bond.

refpect to his owners, previous to the
time of her arrival in a foreign port and
of lending money for the relief of the
fhip's neceffities ; and will go farther,
and fay, that neither ought it to be affec-
ted by the captain's fubfequent conduct,
provided the lender was in no ways pri-
vy to, or knowingly affiftant in, his obli-
quities.

It has been urged on the other fide,
that the law of hypothecation was de-
figned folely for the benefit of the own-
ers, and an inference drawn, that if it
can be fhewn that the owners of a veffel
have not been benefited, but injured, by
the captain's conduct and confequent
hypothecation, it ought not to be allow-
ed. But this law has for its object the
good of commerce in general. And no
ftranger would lend money on hypothe-
cation, if his lien on the fhip was to be
invalidated by fome future proof that
the voyage was irregular, or that the
captain had deviated from the orders of
his owners and injured their interefts,
either

either before or after the hypothecation made.

BUT where fhall we find, in the prefent cafe, that *neceffity* which fhould juftify the captain's conduct, and be the ground of a genuine hypothecation? This veffel was charter'd by the king of Spain or his agent, the cargo on board was on the king's account, and fhe arrives in a leaky and difabled condition in one of his majefty's ports, where he had an officer ftation'd. This officer, the Intendant, orders the brig to the public warehoufe to be difcharged, and then round to the king's arfenal to be repaired; all which was done at the king's expence. In truth, I cannot conceive a cafe of lefs neceffity, or one wherein a more certain and able relief could be depended upon.

BUT it is faid, there were confiderable delays before the Intendant interfered, and that the captain was obliged to fend in five or fix memorials, and in the mean time the mariners were in great want of wages and frefh provifions, and that in

this

this neceffity the captain applied to Cu-
pifono for 200 dollars, who refufed to
lend them unlefs the veffel fhould be
hypothecated for his fecurity. It ap-
pears, however, by the depofition, that
the money was lent by Cupifono before
the captain had made any application at
all to the Intendant, and therefore the
neglect of the Intendant could not have
occafioned the neceffity of borrowing
money from Cupifono. That the cap-
tain of a veffel in the king's fervice, and
in one of his majefty's ports, fhould not
have credit for a few days provifions,
until the proper officer could be applied
to, is too incredible to be ferioufly ad-
mitted. Still lefs can it be a fufficient
ground for an hypothecation, that the
mariners muft have wages paid to them,
in a place where it does not appear that
any wages were due; nor is it probable
that any could be due, becaufe this was
neither the conclufion of the voyage,
nor even a port of delivery.

THE money ought to have been lent
folely on the faith of the hypothecation,
and

and not on any perfonal credit; but here was a ftrong and well founded credit, for it is in teftimony that Cupifono knew that this brig was charter'd for the king's fervice, and it is exprefsly faid, that the money was borrowed to pay wages and procure frefh provifions *until money could be had from the Intendant.*

FURTHER, in the quotation from *Mol-loy*, Book II. chap. 11. feſt. 11. it is faid —" When a mafter is out of the coun-" try, and where he hath no owners, nor " any goods of their's, *nor of his own,*" &c. Now, it is confeft that the captain had property of his own, and, as it fhould feem, to a confiderable amount, fince it was fufficient to induce him to violate his duty to his owners, in taking the brig, contrary to their orders,* on a trading

H                          voyage

---

* *Tranflation of the failing orders.*

Philadelphia, 18th of Oſtober, 1787.
DON NARISCO SANCHEZ,
        Dear fir,
    YOU will obferve the following orders—When you arrive at Carthagena, you will fay that you carry 300 barrels of flour for the king and troops. You will deliver
                                                        my

voyage to Jamaica for his own benefit ;
that at Jamaica he bought goods fuitable
for the Havannah market, and actually
fold them at Havannah, tho' contraband
—and that Cupifono, the lender, was pri-
vy to thefe circumftances. So that, in-
ftead of the lender's having the brig alone
to look to for his fecurity, he had two fub-
ftantial perfonal credits to depend upon,
viz. the Intendant, from whom he might
expect repayment of monies advanced
for

my letter to Don Manuel Garcia del Rio, to whom it is
directed. He will fell your venture and remit me the
amount to pay your creditors. You muft not ftay long
in thefe ports, and if you have the good luck to be dif-
patched foon, you will come back with the cargo of dye-
wood, which you will take at that port. If it is in Janu-
ary and the river is frozen, you will go to New York,
where you will deliver your cargo to Don Sabrados de los
Monterros, and will write me by poft. You will take a
particular care of your people, and fuffer no diforder.

THE faid Don Garcia will give you the cafh you fhall
want for the provifions of the brig, defiring you to be
very faving in all, but let nothing be wanted, and keep
good order. In cafe you fhould not be difpatch'd foon,
you will prefent a memorial to the Viceroy, conforming
yourfelf to the charter party.

MAY God grant you a good voyage.

JUAN JOSEPH DE AGUIRE PEREZ.

for the ufe of a veffel in the king's em-
ploy, and the captain, whofe property
he might have attached before he left
the ifland, if fatisfaction was not made.
This circumftance alone, that is to fay,
Cupifono's knowledge that the captain
had property of his own on the fpot,
fufficient to anfwer the prefent exigen-
cies of the veffel, would have invalidat-
ed the bond as a maritime hypothecati-
on, inafmuch as it removes that *neceffity*
which the law requires.

THERE is a circumftance in the pre-
fent cafe, which, although not in itfelf
conclufive, forms too ftriking a feature
in the tranfaction to pafs unnoticed.   A
fingularity peculiar in a maritime hypo-
thecation is, that the law allows an extra-
ordinary premium or intereft to the len-
der, even to any extent, according to
the rifk to be run ; becaufe, if the fhip
fhould be loft, the money lent is loft
with her.   But here a ftranger lends 200
dollars to a captain in diftrefs, without
even ftipulating for common legal inte-
reft for the ufe of his money.   I fay,
this

this alone might not be conclufive againft the hypothecation, becaufe a ftranger may be as generous as he pleafes; but, in connection with the other circumftances, it gives room for fufpicion that the engagement of the brig to Cupifono was not made within the rules and fpirit of the maritime law.

FOR the above reafons, I adjudge that the bill in this caufe be difmifs'd, fo far as the fame hath refpect to a claim of 200 dollars, faid to have been lent on the credit of the brig Santiffima Trinidad.

I AM now to confider the libellant's demand of wages for ferving as pilot and mariner on board this veffel from Havannah to Philadelphia.

THE counfel for the libellant hath refted his claim of £.87 - 5, for wages, on a written contract made at the Havannah, between Narifco Sanchez y Serna, then captain, and Canizares.

BUT it has been contended, on the other fide, that as this agreement is in writing,

writing, and bears a feal, and is not, ac-
cording to the terms thereof, in the ufual
way of agreeing for mariners wages, it
becomes a fpecial contract, and is not
properly of admiralty jurifdiction.

IT's being in writing, however, is no
more than a teftimony or memorandum
of the agreement made, and does not af-
fect the jurifdiction of this court.   What
is called a feal, appears to be nothing
more than a printed ftamp, for which a
duty is paid to the crown—certainly, it
is not the feal of the parties, or of either
of them.   But, as to the terms of the
contract, thefe are indeed out of the
ufual courfe, and deferve further con-
fideration.

ONE of the reafons for allowing ma-
riners to fue in the Admiralty for their
wages is, that the debt arifes from fer-
vices performed, or to be performed, at
fea; and a lien on the fhip is given them
for fecurity, becaufe the contract they
make is fuppofed to be on the credit of
the fhip.

Now, although the wages of 20 dol-
lars

lars per month, promifed in the prefent cafe, appear to be extravagant, yet as the difficulty of getting a perfon qualified to ferve both as a fkilful pilot and able mariner might have been great, I think the rate of wages per month ought to be allowed as contracted for. But I cannot, upon any principle, allow, that a captain hath a power to bind his owners and their veffel to the payment of a mariner's wages for three months after his difcharge, and after all fervices at fea or elfewhere have ceafed. If he could legally do this for three months, why not for fix or for twelve months, or even faddle his owners with an annuity for life to a mariner, for a few weeks actual fervice ? How far the common law might confider this contract as binding on the captain perfonally, it is not my bufinefs to fay ; but, as Judge of Admiralty, I fhall be far from doing my part towards eftablifhing a precedent by which captains, in addition to the great power they neceffarily have over the property of their employers, may have

that

that of obliging them to the payment of unlimited fums for an unlimited time. The captain might have engaged for his owners, to pay wages per month during the fervice, or a fpecific fum for the run, to any amount juftifiable by the circumftances and neceffities of the cafe ; but to bind the owner to periodical payments to a mariner, after a total difcharge from the fervice, is what I believe no captain of a veffel ever before attempted. For, whether this was to be paid all at once, or at three feveral times, it matters not ; the contract is for *three months wages after difcharge.*

THERE is another claim under this contract for 60 dollars, to take the libellant back to the Havannah, on being difcharged here.

THE maritime cuftom is, that if a mafter or owner difcharge a mariner in a foreign port, before the completion of the voyage for which he engaged, fome reafonable allowance fhall be made, over and above the wages due; to enable him to return to his own country, or go to the

the port which, by the articles, should
have completed the voyage. And this
allowance is ufually the amount of one
month's wages. And it is a reafonable
cuftom, where the mariner is willing to
perform articles and finifh the voyage,
but the mafter or owner thinks fit to
difcharge him fooner, for their own con-
venience, and without juft caufe of com-
plaint againft the mariner. This part of
the contract before us is, therefore, con-
fiftent with maritime cuftom, but cer-
tainly unreafonable as to the fum pro-
mis'd.

WHATEVER power a captain may have
by law to bind his owners by contracts
made abroad for the fervices of the fhip,
yet he cannot oblige them beyond what
is ufual and cuftomary, without fhew-
ing that the unufual charge arofe from
the neceffity of the cafe. The prefent
charge is exprefsly made for conveying
the libellant back to the Havannah—I
have therefore enquired what is the u-
fual charge for a paffage from this port
to

to the Havannah, and find that 40 dollars is an ample and generous allowance.

FRAUD and collusion between the captain and Canizares, the libellant, have been suggested, but not proved. Yet, if I had not found that this cause might and ought to be determined on general principles, there are two circumstances in the case which would have induced a more strict enquiry into this captain's conduct. The one, which I have already noticed, is Cupisono's lending money on hypothecation, without securing or even asking for common interest; which, though a possible, is not a usual occurrence.—The other, is a contract between the captain and Canizares, which concludes with these remarkable words— " *Each*" (that is, the original and copy) " *having the same strength as if they had* " *been executed before a Notary Public at* " *Havannah*."—The question naturally occurs, And why was not this contract made and executed before a Notary Public at the Havannah ? An honest captain, who is reduced to the necessity of

1                                        binding

binding his owners to hard and unufual terms, would at leaft take care that nothing fhould be wanting in point of form and public notoriety to juftify his conduct. And, befides, I fufpect that this contract, which bears a printed feal, or ftamp, could not be legally executed, according to the regulations of the Spanifh maritime laws and cuftoms, but in the prefence of a Notary, or fome public officer. But it was not neceffary to clear up thefe appearances, as the caufe may be decided on other grounds.

UPON the whole, I adjudge and decree, that Canizares, the libellant, have and receive from Juan Jofeph de Aguire Perez, the refpondent, the fum of 112 dollars and 60-90ths of a dollar, equal to £42 - 5 - Pennfylvania currency—that is to fay—

For 5 months and 19 days wages, from July 1ft to Dec. 19th, at twenty dollars per month, - - - £42 5 0

For

Brought forward, £42 5 0
For his paſſage to the Havan-
nah,  •  -  -  -  15 0 0
_____
57 5 0
From which deduct forty dol-
lars paid in advance at Ha-
vannah,  -  -  -  15 0 0
_____
There remains  -  £.42 5 0
_____

WITH reſpect to the £5 - 12 - 6 added to the account, and charged for a month's boarding, I ſhall take no further notice of it than to obſerve, that it is neither mentioned in the libel, nor ſupported by any vouchers or teſtimony whatever.

FINALLY, I adjudge, that the libellant pay one half, and that the reſpondent pay the other half, of the coſts and char-ges of this ſuit.